United States District Court
Southern District of Texas
**ENTERED**
July 15, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARGARITA CHAPA,** | § | |
| *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-CV-3444** |
| | § | |
| **CITY OF PASADENA**, | § | |
| *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

This is a civil rights case brought under 42 U.S.C. § 1983 by five individuals against the City of Pasadena and several police officers. Pending before the Court are Defendants' Motions to Dismiss for failure to state a claim. (Dkt. Nos. 8, 10.)[1] Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** the first Motion to Dismiss be **DENIED AS MOOT** and the second Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

Plaintiffs Margarita Chapa, Balthazar Cantu, Irene Chapa, Miguel Chapa, and Alexander Lopez filed this action on October 19, 2021 against Defendants Jesse Baum, Davis Brashier, Nicholas Colunga, Charles Hawthorne, Mitchell Inns, Michael Ludeke II, Anthony Romero, Victor Yanez, and Jennifer Neilon (collectively, "Officer Defendants") for various constitutional violations and against the City of Pasadena ("the City") for its policies allegedly leading to these violations. (Dkt. No. 1.) Defendants moved to dismiss the complaint (Dkt. No. 8) and Plaintiffs

---

[1] On April 26, 2022, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 15.)

filed an amended complaint (Dkt. No. 9).[2] In the amended complaint, Plaintiffs allege Officer Defendants violated their constitutional rights, particularly under the First and Fourth Amendments, while responding to a noise complaint at the home of Margarita Chapa ("Ms. Chapa") and Balthazar Cantu ("Mr. Cantu") on October 19, 2019. (*Id.* ¶¶ 21, 25.) Plaintiffs make the following factual allegations, taken as true, as to what occurred that night.

Officers Hawthorne and Baum arrived at Ms. Chapa and Mr. Cantu's home around 10:40 p.m. and encountered Plaintiffs sitting in lawn chairs in the garage with friends. (Dkt. No. 9 ¶¶ 25–26.) Ms. Chapa explained that a mariachi band had been there earlier but had since left. (*Id.* ¶ 28.) The officers told Plaintiffs that they had to move into the garage and shut the door if they wanted to drink alcohol. (*Id.* ¶ 29.)[3] Ms. Chapa told the officers she could drink alcohol anywhere on her own property and indicated neither she nor her guests were anywhere near the public sidewalk. (*Id.* ¶¶ 30–31.) She also asked the officers to leave multiple times. (*Id.* ¶¶ 32–34.) Officers Hawthorne and Baum eventually left. (*Id.* ¶ 34.)

A few hours later, around 1:20 a.m., Officers Hawthorne and Baum returned to the home along with Officer Ludeke. (Dkt. No. 9 ¶ 35.) Plaintiffs and their guests were sitting inside the garage in lawn chairs with the garage door open and were not playing music or making loud noises. (*Id.* ¶¶ 36–37.) The officers told Plaintiffs to move inside the garage and shut the door, and Plaintiffs began to do so. (*Id.* ¶¶ 38–39.)[4] Ms. Chapa, while standing in her garage, asked why they were required to be in the garage with the door shut. (*Id.* ¶ 40.) The officers responded that there had been a noise complaint even though, according to Plaintiffs, no second noise complaint had

---

[2] The Court thus recommends denying the first Motion to Dismiss (Dkt. No. 8) as moot.

[3] It is unclear whether Plaintiffs were in the garage or in front of the garage when the officers arrived. (*See* Dkt. No. 9 ¶¶ 26, 29.) However, this does not impact the case at this stage.

[4] Again, it is unclear whether Plaintiffs were in the garage or in front of the garage when the officers arrived. (*See id.* ¶¶ 36, 38.) This, again, does not impact the case at this stage.

occurred. (*Id.* ¶ 41.) One of the officers then told Mr. Cantu to get Ms. Chapa under control or she would be arrested. (*Id.* ¶ 43.) Mr. Cantu responded that Ms. Chapa was in the home, since she was in the garage, and then closed the garage door. (*Id.* ¶¶ 44–45.) The three officers hovered outside the garage door for several minutes and Officer Ludeke told the other two officers he would arrest Ms. Chapa if she came out of her home for any reason that night. (*Id.* ¶ 46–47.) Ms. Chapa then opened the front door and, while standing inside her home, told the officers to get off her property. (*Id.* ¶ 48.) Officers Baum and Hawthorne approached the front door and told Ms. Chapa to go inside, to which Ms. Chapa responded that she was inside. (*Id.* ¶ 49.)

While Officers Baum and Hawthorne stood outside the home and Ms. Chapa stood inside the home, the discussion escalated. (Dkt. No. 9 ¶ 50.) Ms. Chapa told the officers to leave several times but they refused, so Ms. Chapa asked someone to get her cell phone in order to record the interaction. (*Id.* ¶¶ 51–52.) Officer Hawthorne then demanded Ms. Chapa get her identification and Ms. Chapa shut the front door. (*Id.* ¶¶ 53–54.) Officers Hawthorne and Baum forced their way into the home without probable cause, a warrant, consent, or exigent circumstances, damaging the door frame and surrounding walls. (*Id.* ¶¶ 55–59, 78.) Officer Ludeke followed and called additional officers to the scene. (*Id.* ¶ 60.) Immediately upon entering the home, the officers shoved Ms. Chapa to the ground and handcuffed her. (*Id.* ¶ 61.)

Plaintiffs Miguel Chapa and Alexander Lopez, hearing the commotion, ran into the foyer to defend Ms. Chapa but were assaulted, handcuffed, and dragged out of the home. (Dkt. No. 9 ¶¶ 62–64.) Plaintiff Irene Chapa—Ms. Chapa's 62-year-old mother who did not understand what was happening—then began to clean up the furniture and shut the front door. (*Id.* ¶¶ 66–67.) However, an officer kicked in the door with Irene Chapa standing behind it and forcefully arrested her. (*Id.* ¶¶ 68–69.) A few hours later, Mr. Cantu went to the Pasadena Police Station to bail out

his family members, but Officer Hawthorne arrested him for public intoxication. (*Id.* ¶¶ 70–71.) Officer Hawthorne told Mr. Cantu he was going to take his kids to CPS. (*Id.* ¶ 71.) Two officers returned to the home around 4:50 a.m., looked around the property, and knocked on the door. (*Id.* ¶¶ 72–73.) However, when no one answered, they left. (*Id.* ¶ 73.)

According to Plaintiffs, Officers Hawthorne and Brashier made false statements on the Incident Report and Officer Hawthorne made additional false statements to the Harris County District Attorney in order to justify the unlawful entry and arrests. (Dkt. No. 9 ¶¶ 79–82.) Ms. Chapa was charged with Resisting Arrest and Interfering with Public Duties. (*Id.* ¶ 74.) However, a judge found there was no probable cause and the charges were dismissed in February 2020. (*Id.*) Irene Chapa, Miguel Chapa, and Alexander Lopez were all charged with Interfering with Public Duties, but the charges were dismissed in October 2020. (*Id.* ¶¶ 75–77.)

Plaintiffs assert several claims under § 1983 against Officer Defendants: (1) unlawful entry (Count I); (2) false arrest (Count II); (3) excessive force (Count III); (4) failure to intervene (Count IV); and (5) malicious prosecution (Count V). (Dkt. No. 9 ¶¶ 90–111.) Plaintiffs assert that these claims involve violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. (*Id.* ¶ 21.) Plaintiffs also assert a claim under § 1983 against the City based on its custom of failing to properly train, supervise, and discipline officers who commit Fourth Amendment violations (Count VI). (*Id.* ¶¶ 112–17.) Plaintiffs provide three examples of previous misconduct by the City's police officers and further point out that none of the Officer Defendants in this case have been terminated, disciplined, or investigated as a result of their actions. (*Id.* ¶¶ 83–89.)

On January 4, 2022, Defendants filed a Motion to Dismiss the amended complaint under Rule 12(b)(6). (Dkt. No. 10.) Defendants argue the claims against Officer Defendants should be dismissed because Plaintiffs do not allege sufficient facts to show their constitutional rights were

violated and because their claims are barred by qualified immunity. (*Id.* at 5–15.) Defendants also argue the claim against the City should be dismissed because Plaintiffs do not identify an unconstitutional policy, fail to allege a City policymaker approved or was aware of any policy, and fail to allege any policy caused the deprivation of constitutional rights. (*Id.* at 15–19.) In response, Plaintiffs argue that their allegations against Officer Defendants are sufficient at this stage, particularly as to their First and Fourth Amendment claims, and that they overcome qualified immunity because the conduct was objectively unreasonable in light of clearly established law. (Dkt. No. 11 at 5–16.) Plaintiffs also argue their claim against the City should survive because they identify prior incidents of similar misconduct and because they will uncover additional evidence during discovery. (*Id.* at 16–18.) In reply, Defendants argue that Plaintiffs have abandoned several of their claims by failing to respond to Defendants' arguments and that Plaintiffs are not entitled to discovery without first alleging sufficient facts to state a claim for relief. (Dkt. No. 12 at 2–4.)

The Court finds that under the facts alleged, which must be taken as true at this stage of the proceedings, Plaintiffs were subjected to a series of clearly unconstitutional actions by Officer Defendants despite their compliance with the law and right to enjoy the privacy of their home. However, Plaintiffs' allegations are insufficient to hold the City liable. Defendants' Motion to Dismiss should be granted in part and denied in part as follows:

(1) Plaintiffs sufficiently state a claim and overcome qualified immunity for their Fourth Amendment unlawful entry (Count I), false arrest (Count II), and excessive force (Count III) claims;

(2) Plaintiffs do not sufficiently state a claim or overcome qualified immunity for their Fourth Amendment failure to intervene claim (Count IV);

(3) Plaintiffs sufficiently state a claim and overcome qualified immunity for their First Amendment retaliation claim (count not specified);

(4) Plaintiffs abandon their Fifth, Eighth, and Fourteenth Amendment claims (counts not specified) and their malicious prosecution claim (Count V); and

(5) Plaintiffs fail to state a claim against the City (Count VI).

In sum, Plaintiffs' Fourth Amendment unlawful entry, false arrest, and excessive force claims and First Amendment retaliation claim against Officer Defendants should survive. All other claims against Officer Defendants and the City should be dismissed. The Court, however, may reach an entirely different result as to whether Plaintiffs overcome qualified immunity for the surviving claims at the summary judgment stage.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move to dismiss a complaint based on failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain detailed factual allegations, it "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that . . . raise a right to relief above the speculative level." *Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 500 (5th Cir. 2020) (quotations omitted). A court must accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *True v. Robles*, 571 F.3d 412,

417 (5th Cir. 2009) (quotations omitted). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B. Section 1983

Section 1983 provides a federal cause of action based on the deprivation of a person's rights secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *see Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotations omitted). To state a claim against individuals under § 1983, a plaintiff must allege a violation of a federal constitutional or statutory right and demonstrate that the alleged violation was committed by a person acting under color of law. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). To state a claim against a local government under § 1983, a plaintiff must also allege that "an official policy or custom of the [local government] was a cause in fact of the deprivation of rights inflicted." *Id.* (quotations omitted). Further, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

### III.   CLAIMS AGAINST THE CITY

Plaintiffs assert a claim against the City—also known as a *Monell* policy claim—for its de facto custom of failing to properly train, supervise, or discipline officers who commit Fourth Amendment violations. (Dkt. No. 9 ¶¶ 83–89, 112–17.) Defendants argue this claim should be dismissed because Plaintiffs make only bare legal conclusions and fail to identify any specific policy or custom, any policymaker who implemented or even knew about such a policy or custom, or any facts indicating any policy or custom caused the alleged deprivation of rights. (Dkt. No. 10 at 15–19.) Defendants also argue that Plaintiffs' request for punitive damages should be dismissed

because such damages are not recoverable. (*Id.* at 19.) Plaintiffs argue that their allegations are sufficient because they identify prior incidents with similar facts—particularly instances in which officers, including Officer Baum, violated the Fourth Amendment—and that more information on the City's policies and customs will become evident after discovery. (Dkt. No. 11 at 17–18.) The Court agrees with Defendants.

A municipality cannot be vicariously liable for the actions of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality can, however, be liable for constitutional violations resulting from its own official policies and customs. *Monell*, 436 U.S. at 690–91. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. To state a *Monell* claim, a plaintiff must allege: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quotations omitted). Further, "every *Monell* claim requires an underlying constitutional violation." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017).

Plaintiffs' *Monell* policy claim should be dismissed for several reasons. First, Plaintiffs fail to sufficiently plead an underlying constitutional violation associated with failure to intervene, as explained below, and thus there can be no custom or policy associated with such a violation. *See, e.g.*, *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (affirming dismissal of *Monell* claim because plaintiff failed to plausibly allege an underlying constitutional violation); *Jenkins v. Tarrant Cnty. Sheriff's Off.*, No. 21-CV-910, 2022 WL 426593, at *9 (N.D. Tex. Feb. 11, 2022) (dismissing *Monell* claim under Rule 12(b)(6) because plaintiff failed to plausibly allege

underlying constitutional violations). Plaintiffs' allegation that Officer Baum was involved in a previous incident in which he failed to intervene in another officer's use of force is thus inapposite.

Second, Plaintiffs do not sufficiently plead a *Monell* policy claim for failing to properly train, supervise, or discipline officers for unlawful entry, false arrest, and excessive force. Plaintiffs provide only three examples of allegedly similar incidents over the course of several years—which does not establish a widespread pattern or custom tantamount to an official policy—and fail to create a plausible inference that a policymaker had the requisite knowledge of any such policy or custom. Moreover, none of the examples involved arrest without probable cause and only one involved entry into someone's home in response to a 911 domestic violence call. (Dkt. No. 9 ¶¶ 84–86.) Plaintiffs' allegations are insufficient. *See, e.g.*, *Pena*, 879 F.3d at 622–23 & n.14 (indicating two other incidents of similar conduct would be insufficient to state a *Monell* claim and finding plaintiffs failed to allege actual or constructive knowledge of any policymaker); *Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 467 (S.D. Tex. 2021) (finding two prior incidents of excessive force "not enough to support an inference of either a widespread practice of Pasadena Police Department constitutional violations like those the plaintiffs plausibly allege or that a municipal policymaker had actual or constructive knowledge of an unconstitutional policy or practice"); *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 753–54 (S.D. Tex. 2016) (finding three prior isolated incidents insufficient to state a *Monell* claim and noting that "where actions of city employees are used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the police officers' course of conduct warrants attribution to the governing body") (quotations omitted).[5]

---

[5] To the extent Plaintiffs allege failure to properly train, supervise, or discipline as separate from the policy claim, those claims fail because they are conclusory. *See, e.g.*, *Jenkins*, 2022 WL

Third, contrary to Plaintiffs' argument, they are not entitled to discovery before their claims are dismissed under Rule 12(b)(6). It is true that plaintiffs alleging a *Monell* claim are not required to plead facts "'peculiarly within the knowledge of defendants.'" *Ybarra v. Davis*, 489 F. Supp. 3d 624, 633 (W.D. Tex. 2020) (quoting *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009)). However, this does not mean plaintiffs can automatically proceed past the motion to dismiss stage by making only boilerplate allegations and arguing they will provide further details after discovery. *See Clark v. Thompson*, 850 F. App'x 203, 209 (5th Cir. 2021); *Byrd v. Madisonville Consol. Indep. Sch. Dist.*, No. 19-CV-4473, 2020 WL 2850755, at *1 (S.D. Tex. June 1, 2020) (rejecting plaintiff's argument she should be allowed discovery to uncover a policy of excessive force as a fishing expedition and noting plaintiff either did not have a good faith basis for her claim or for some reason decided not to plead those facts); *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842–45 (S.D. Tex. 2011) (finding allegations that the police department had a pattern of excessive force and unlawful arrests too generic to survive a motion to dismiss, despite recognizing that plaintiffs generally do not have access to specific details regarding internal policies prior to discovery). Plaintiffs' allegations here are too conclusory to allow discovery.[6]

In sum, Plaintiffs' claims against the City should be dismissed because they fail to allege an underlying constitutional violation associated with failing to intervene, fail to provide relevant examples establishing a custom or knowledge of other Fourth Amendment violations, and fail to demonstrate why discovery is warranted. Additionally, Plaintiffs' request for punitive damages against the City should be dismissed because municipalities are immune from such damages. *See*

---

426593, at *10; *Byrd v. City of Madisonville*, No. 19-CV-4473, 2020 WL 2857951, at *5 (S.D. Tex. May 11, 2020), *report and recommendation adopted*, 2020 WL 2850755 (June 1, 2020).

[6] The plaintiff in *Ybarra*—which Plaintiffs cite to argue they are entitled to discovery— pleaded the city had a policy of requiring individuals to provide identification when they were not legally obligated to do so. *See* 489 F. Supp. 3d at 634. Plaintiffs here allege no such specifics.

*Mendez v. Jones*, No. 21-CV-80, 2021 WL 5548565, at *10 (S.D. Tex. Sept. 22, 2021), *report and recommendation adopted*, 2021 WL 4988648 (Oct. 27, 2021).

## IV.     CLAIMS AGAINST OFFICER DEFENDANTS

Plaintiffs allege Officer Defendants violated their constitutional rights primarily under the First and Fourth Amendments. Officer Defendants, however, invoke qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability," including under § 1983, "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is intended as immunity from suit and not just from liability, application of the defense should be decided at the earliest possible stage of the litigation. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate its inapplicability. *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022); *see Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020).

To defeat qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quotations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [officer] that his conduct was unlawful in the situation he confronted." *Hicks v. LeBlanc*, 832 F. App'x 836, 840 (5th Cir. 2020) (quotations omitted). A plaintiff may show a right is clearly established either by identifying case law "in which an officer acting under similar circumstances was held to violate the Constitution"

or by demonstrating "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (quotations and alterations omitted).

The Court here addresses each alleged constitutional violation in turn. In doing so, the Court first determines whether Plaintiffs' allegations are sufficient to plausibly infer Officer Defendants violated their constitutional rights and then addresses whether the Officer Defendants' actions, as alleged, were objectively unreasonable in light of clearly established law.[7]

### A. Fourth Amendment Violations

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. It "guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 613–14 (1989); *see Morgan*, 969 F.3d at 245 (explaining the Fourth Amendment applies to state officials through the Fourteenth Amendment). Plaintiffs bring claims for unlawful entry, false arrest, excessive force, and failure to intervene.

### 1. Unlawful Entry

"[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (quotations omitted); *see*

---

[7]As an initial matter, Defendants argue Plaintiffs fail to identify how each officer was involved in unconstitutional conduct. (Dkt. No. 10 at 8.) However, with the possible exception of Officer Neilon, Defendants fail to develop this argument. They do not explain which Officer Defendants should be dismissed from which claims but instead argue that Plaintiffs fail to state any claims against any of them. It is not the Court's task to develop this argument and thus the Court does not address it at this time. *See Mann v. Choate*, No. 16-CV-1315, 2018 WL 1400945, at *8 (E.D. Tex. Mar. 19, 2018). The Court also finds it inappropriate to dismiss Officer Neilon because Plaintiffs do allege she was present and unlawfully entered their home. (*See* Dkt. No. 9 ¶ 1.)

*Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("At the [Fourth] Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.") (quotations omitted). As a result, the "warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment." *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001). To state a Fourth Amendment unlawful entry claim, a plaintiff must plausibly plead: "(1) the officer entered the home; (2) there was no warrant; and (3) there was no emergency or other justification for entering the home." *Sanchez v. Gomez*, No. 17-CV-133, 2017 WL 3842137, at *4 (W.D. Tex. Sept. 1, 2017).

Plaintiffs here state a claim for unlawful entry. Plaintiffs allege Officers Hawthorne and Baum refused to leave their property and demanded identification from Ms. Chapa even though she was in her own home at the time. (Dkt. No. 9 ¶¶ 49–54.) Plaintiffs allege Officers Hawthorne and Baum forced their way inside without consent, a warrant, or exigent circumstances[8] and caused damage to the door frame and surrounding walls. (*Id.* ¶¶ 55–59.) Plaintiffs allege Officer Ludeke and others followed. (*Id.* ¶ 60.) This is sufficient to state a Fourth Amendment claim for unlawful entry. *See, e.g.*, *Ybarra*, 489 F. Supp. 3d at 626–29 (finding plaintiff stated an unlawful entry claim when officer jumped over the fence into the yard after plaintiff refused to provide identification); *Sanchez*, 2017 WL 3842137, at *4–5 (finding plaintiff unquestionably pleaded an unlawful entry claim by alleging officers pushed her out of the way and entered the home without a warrant, consent, or indication anyone inside the home posed a threat).

---

[8] Defendants assert exigent circumstances existed to enter the home and cite cases involving hot pursuit of a fleeing misdemeanant. (*See* Dkt. No. 10 at 12.) This exception clearly does not apply because Ms. Chapa did not attempt to flee a crime scene, nor was there probable cause to believe she had committed any crime under the facts alleged at this stage of the proceedings. *See infra* Section IV.A.2.

Plaintiffs also overcome qualified immunity. No reasonable officer could have believed, in light of clearly established law, that it was lawful to storm into a home without consent, a warrant, or exigent circumstances or that any of those conditions existed here. Officer Defendants are not entitled to qualified immunity at this stage. *See, e.g.*, *E.R. v. Jasso*, No. 18-CV-298, 2021 WL 5605127, at *18 (W.D. Tex. Nov. 30, 2021) (denying qualified immunity and finding entry into plaintiff's home without a warrant or emergency was an "obvious case" in which no reasonable officer could believe his actions were lawful); *Eachus v. Steelman*, No. 20-CV-324, 2021 WL 857988, at *8 (E.D. Tex. Mar. 8, 2021) (denying qualified immunity at the motion to dismiss stage when officers entered plaintiffs' home without a warrant or exigent circumstances in order to investigate a dog-related complaint and noting summary judgment would be a "better vehicle" to address qualified immunity); *Morris v. Sorenson*, No. 16-CV-71, 2016 WL 11554094, at *6 (W.D. Tex. Nov. 9, 2016) (denying qualified immunity for entering plaintiff's home without a warrant because such a Fourth Amendment violation was readily apparent), *report and recommendation adopted*, 2016 WL 11554107 (Dec. 1, 2016). Plaintiffs' unlawful entry claim should survive.

## 2. False Arrest

"The Fourth Amendment requires that a warrantless arrest by an officer be supported by probable cause." *Cano v. Vickery*, No. 16-CV-392, 2018 WL 4567169, at *3 (S.D. Tex. Sept. 24, 2018) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense." *Thornton v. Lymous*, 489 F. Supp. 3d 470, 489 (E.D. La. 2020) (quotations omitted), *aff'd*, 850 F. App'x 320 (5th Cir. 2021). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and thus it "is not

a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotations omitted). To state a Fourth Amendment false arrest claim, a plaintiff must plausibly allege there was no probable cause for the arrest. *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020).

Plaintiffs allege Officer Defendants arrested Ms. Chapa without probable cause for Interference with Public Duties and Resisting Arrest. (Dkt. No. 9 ¶¶ 74, 100.) Plaintiffs also allege Officer Defendants arrested Irene Chapa, Miguel Chapa, and Alexander Lopez without probable cause for Interference with Public Duties and Mr. Cantu without probable cause for Public Intoxication. (*Id.* ¶¶ 71, 75–77, 100.) Interference with Public Duties occurs when a person "with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). Resisting Arrest occurs when a person "intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . by using force against the peace officer." *Id.* § 38.03(a). Public Intoxication occurs when a person "appears in a public place while intoxicated to the degree that the person may endanger the person or another." *Id.* § 49.02. Plaintiffs' false arrest allegations are sufficient at this stage.

As to Ms. Chapa and Interference with Public Duties, Defendants appear to argue there was probable cause to arrest Ms. Chapa upon her refusal to produce identification. (*See* Dkt. No. 10 at 10.) The Court disagrees at this stage of the proceedings. Plaintiffs allege Officers Hawthorne, Baum, and Ludeke returned to the home without reason and refused to leave despite Plaintiffs' ultimate compliance with their requests to move inside. (Dkt. No. 9 ¶¶ 35–46.) Plaintiffs allege Ms. Chapa, while standing in her own home, indicated she was going to record the misconduct and the officers then demanded identification. (*Id.* ¶¶ 48–53.) Ms. Chapa shut the door in response. (*Id.* ¶ 54.) Under these facts, Ms. Chapa merely refused to produce identification or

otherwise comply with the officers' requests when she was not obligated to do so. This does not constitute probable cause at this stage of the proceedings. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 694–95 (5th Cir. 2017) (holding police cannot arrest an individual solely for refusing to provide identification and finding plaintiff stated an unlawful arrest claim when officers handcuffed him for doing so); *Ibarra v. Harris Cnty.*, 243 F. App'x 830, 833–34 (5th Cir. 2007) (finding plaintiff's arrest for refusing to stop taking photos during execution of a search warrant violated the Fourth Amendment when he was not otherwise committing a crime).

As to Ms. Chapa and Resisting Arrest, Plaintiffs allege Officer Defendants arrested her immediately after breaking down the door to her home. (Dkt. No. 9 ¶ 61.) None of the allegations indicate she was physically resisting or doing anything other than screaming. *See Sheehan v. Texas*, 201 S.W.3d 820, 823 (Tex. App. 2006) ("[R]efusing to cooperate with being arrested does not constitute resisting arrest by force."); *Alexander v. City of Round Rock*, 854 F.3d 298, 305–06 (5th Cir. 2017) (finding no probable cause for resisting a search when plaintiff did not physically resist, even though he refused to answer questions). To the extent shutting the front door could be considered physical resistance, none of the allegations indicate Ms. Chapa was under arrest when she did so. *See Molina v. Texas*, 754 S.W.2d 468, 474 (Tex. App. 1988) ("[Section] 38.03 contemplates resisting an effort to implement traditional arrest and not . . . resisting an investigative detention or stop."). In other words, under the facts alleged, Ms. Chapa did not physically resist once she was under arrest. This does not constitute probable cause at this stage of the proceedings.

As to Miguel Chapa, Alexander Lopez, and Irene Chapa, it would be illogical to find at this stage that there was probable cause to believe they interfered with Ms. Chapa's arrest when that arrest, as alleged, was unlawful in the first place. *See* Tex. Penal Code § 38.15(a)(1)

(providing interference occurs "while the peace officer is *performing a duty or exercising authority imposed or granted by law*") (emphasis added). In any event, Plaintiffs allege that Miguel Chapa and Alexander Lopez ran into the foyer to defend Ms. Chapa and that Irene Chapa shut the front door, apparently after the commotion had died down, without understanding what had occurred. (*See* Dkt. No. 9 ¶¶ 62–69.) These allegations do not indicate that Miguel Chapa, Alexander Lopez, or Irene Chapa attempted to physically interfere with Ms. Chapa's arrest or acted with any culpable mental state. *See Carney v. Texas*, 31 S.W.3d 392, 395–96 (noting that interference does not occur when it consists of speech only and that interference requires a person to act with criminal negligence). This does not constitute probable cause at this stage of the proceedings.

As to Mr. Cantu, Plaintiffs allege Officer Hawthorne arrested him when he was trying to post bond for his family even though he committed no crime. (Dkt. No. 9 ¶¶ 70, 100.) None of the allegations indicate Mr. Cantu was intoxicated or was a danger to anyone. *See Prim v. Stein*, 6 F.4th 584, 593 (5th Cir. 2021) (noting "section 49.02 requires more than mere intoxication"). The allegations instead indicate that Officer Hawthorne, who had already been to Mr. Cantu's home two times that evening, threatened to return to take his children to CPS and that at least two officers attempted to do so. (Dkt. No. 9 ¶¶ 71–73.) When viewed in the light most favorable to Plaintiffs, the allegations at this stage indicate Officer Defendants harassed Mr. Cantu over the course of several hours, unlawfully entered his home, falsely arrested several of his family members, arrested him even though he was not intoxicated, and threatened to take his children away. This does not constitute probable cause at this stage of the proceedings.

Plaintiffs also overcome qualified immunity. No reasonable officer could have believed, in light of clearly established law, that probable cause existed for refusing to produce identification, objecting to police conduct without physically interfering or intending to interfere, or appearing in

public without showing signs of intoxication. Officer Defendants are not entitled to qualified immunity at this stage. *See, e.g.*, *Turner*, 848 F.3d at 695 (finding no reasonable officer could believe there was probable cause to arrest plaintiff for refusing to produce identification); *Ibarra*, 243 F. App'x at 834 (finding no reasonable officer could believe there was probable cause to arrest plaintiff for refusing to stop lawful activity); *Alexander*, 854 F.3d at 307 (finding no reasonable officer could believe there was probable cause to arrest plaintiff when he did not physically resist); *Bruce v. Ellis*, No. 12-CV-1683, 2013 WL 1091241, at *10 (N.D. Tex. Mar. 15, 2013) (finding no reasonable officer could believe there was probable cause to arrest plaintiff when she did not show physical signs of intoxication). Plaintiffs' false arrest claim should survive.

### 3. Excessive Force

The Fourth Amendment protects individuals from excessive force during arrest. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). To state a Fourth Amendment excessive force claim, a plaintiff must plausibly allege: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Sanchez*, 2017 WL 3842137, at *8 (quotations omitted). "The second and third elements collapse into a single objective-reasonableness inquiry [that considers the following] factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Pena*, 879 F.3d at 619 (quotations omitted). This inquiry is based on the totality of the circumstances at the time of events and must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Plaintiffs sufficiently state a claim for excessive force at this stage of the proceedings. First, Plaintiffs allege they suffered severe injury and emotional distress as a result of Officer Defendants' actions. (Dkt. No. 9 ¶ 99.) These actions, as alleged, include shoving Ms. Chapa to the ground, assaulting Miguel Chapa and Alexander Lopez and dragging them out of the house, and kicking open the door with Irene Chapa behind it and then forcefully handcuffing her. (*Id.* ¶¶ 61–69.) It is plausible to infer Plaintiffs suffered mental and physical injuries at this stage of the proceedings. *See Flores v. Rivas*, No. 18-CV-297, 2019 WL 5070182, at *10 (W.D. Tex. Aug. 11, 2019) (finding allegations plaintiff suffered injury and mental suffering as a result of being forced to the ground, kicked, and held against the concrete sufficient at the motion to dismiss stage).

Second, Plaintiffs allege the amount of force used was clearly excessive. Plaintiffs were accused of committing only minor offenses in the context of an excessive force analysis. *See Westfall v. Luna*, 903 F.3d 534, 547–48 (5th Cir. 2018) (stating interference with public duties is a minor offense and noting misdemeanors are also generally considered minor offenses). Plaintiffs allege they were not posing an immediate threat to Officer Defendants or resisting arrest. Yet Plaintiffs allege they were forced to the ground, shoved, dragged, and assaulted. Under the facts alleged, the force used was clearly excessive and objectively unreasonable in relation to need. *See, e.g.*, *Eachus*, 2021 WL 857988, at *9–10 (finding that tackling plaintiff and pinning her to the ground was clearly excessive when she was not fleeing, not violent, and was only verbally protesting officer's actions). Plaintiffs sufficiently state an excessive force claim at this stage of the proceedings.

Plaintiffs also overcome qualified immunity. No reasonable officer could have believed, in light of clearly established law, that it was permissible to use such force or that any Plaintiffs committed a severe crime, posed a danger, or were resisting arrest. Officer Defendants are not

entitled to qualified immunity at this stage. *See, e.g.*, *Deville v. Marcantel*, 567 F.3d 156, 167–69 (5th Cir. 2009) (finding officers' actions to be "sufficiently egregious" to deny qualified immunity when officers pulled plaintiff over for a minor traffic violation and quickly resorted to dragging her out of the vehicle, even though plaintiff was not trying to flee and only refused to leave her grandchild alone in the car until her husband arrived); *Eachus*, 2021 WL 857988, at *11 (finding it objectively unreasonable in light of clearly established law to tackle a person to the ground when that person was at most passively resisting arrest). Plaintiffs' excessive force claim should survive.

### 4.  Failure to Intervene

Officers may be liable under § 1983 for failing to intervene in the violation of constitutional rights. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). To state a claim for failure to intervene based on a theory of bystander liability, a plaintiff must plausibly allege the officer: "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) [had] a reasonable opportunity to prevent the harm; and (3) [chose] not to act." *Id.* (quotations omitted). Liability only attaches, however, when an officer is present at the scene and acquiesces in the constitutional violation. *Id.* at 646–47. "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Id.* at 647 (quotations omitted).

Plaintiffs fail to state a claim for failure to intervene. Plaintiffs' factual allegations do not indicate whether any Officer Defendants were present while others were participating in any constitutional violations or whether they would have had time to appreciate what was happening. Instead, Plaintiffs merely make conclusory assertions of the legal elements of a bystander liability claim. (*See* Dkt. No. 9 ¶¶ 100–03.) This is insufficient even at the motion to dismiss stage. *See, e.g.*, *Carr v. City of Spring Valley Vill.*, No. 19-20373, 2022 WL 1553539, at *4 (5th Cir. May 17,

2022) (affirming dismissal of bystander liability claim, even when plaintiffs alleged officers "stood by without intervening," because plaintiffs failed to allege knowledge of a constitutional violation or opportunity to prevent it); *Skinner v. Gautreaux*, No. 20-CV-595, 2022 WL 884915, at *8 (M.D. La. Mar. 24, 2022) (finding bystander liability claim insufficient when plaintiff failed to plead defendant had knowledge or time to intervene).[9]

Plaintiffs also fail to overcome qualified immunity. *See Howard v. City of Houston*, No. 21-CV-1179, 2022 WL 479940, at *12–13 (S.D. Tex. Feb. 16, 2022) (granting qualified immunity because plaintiff failed to demonstrate any reasonable officer would know he was required to intervene in light of Fifth Circuit law); *Heckford v. City of Pasadena*, No. 20-CV-4366, 2022 WL 209747, at *10 (S.D. Tex. Jan. 21, 2022) (granting qualified immunity when evidence did not show officers were present or had the opportunity to intervene, despite denying qualified immunity as to the officers that were directly involved in unconstitutional conduct). Plaintiffs' failure to intervene claim should be dismissed.

### B. First Amendment Violations

The First Amendment protects freedom of speech. U.S. CONST. amend. I. It also "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quotations omitted). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are

---

[9] Plaintiffs appear to argue Officer Defendants may be liable for failure to intervene under a theory of supervisor liability. (*See* Dkt. No. 11 at 13–14.) However, "[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Id.* (quotations omitted). Plaintiffs fail to allege whether any Officer Defendants were supervisors or how they would have caused the alleged constitutional violations.

in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Batyukova*, 994 F.3d at 730 (quotations omitted). To state a First Amendment retaliation claim, a plaintiff must allege: "(1) she was engaged in constitutionally protected activity, (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against her exercise of constitutionally protected conduct." *Villarreal v. City of Laredo*, 17 F.4th 532, 542 (5th Cir. 2021) (quotations and alterations omitted). The First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

Plaintiffs sufficiently state a retaliation claim at this stage of the proceedings. First, Plaintiffs allege that Ms. Chapa repeatedly asked Officer Defendants to leave the property, that Ms. Chapa indicated she wanted to record their misconduct, and that both Ms. Chapa and Mr. Cantu questioned the legality of their actions throughout the evening. (Dkt. No. 9 ¶¶ 32–34, 42–54.) Second, Plaintiffs allege Officer Defendants stormed through the front door, forcefully arrested Ms. Chapa, and later arrested Mr. Cantu when he attempted to bail her out of jail. (*Id.* ¶¶ 54–61, 60–71.) Third, Plaintiffs allege Officer Defendants did so without probable cause— allegations which the Court has found sufficient at this stage—and thus there was no legitimate, non-retaliatory motivation for curtailing their speech. Plaintiffs' allegations are sufficient at this stage. *See, e.g.*, *Eachus*, 2021 WL 857988, at *14 (finding plaintiff's retaliation allegations sufficient when officer banged open her door without probable cause for arrest because he felt disrespected by her earlier statements); *Flores*, 2019 WL 5070182, at *16 (finding plaintiff's allegations sufficient under the First Amendment when officers arrested him without probable cause in response to filming and verbally challenging their activity).

Plaintiffs also overcome qualified immunity at this stage of the proceedings. No reasonable officer could have believed, under the facts alleged and in light of clearly established law, that it was proper to arrest Ms. Chapa or Mr. Cantu without probable cause in response to their demands to leave the property. Officer Defendants are not entitled to qualified immunity. *See, e.g.*, *Brooks v. City of W. Point*, 639 F. App'x 986, 989 (5th Cir. 2016) (denying qualified immunity when officers arrested plaintiff without probable cause for telling them to get off his property); *Ybarra*, 489 F. Supp. 3d at 630–32 (denying qualified immunity when officers retaliated against plaintiff in response to demands to leave his property); *Flores*, 2019 WL 5070182, at *16 (denying qualified immunity when plaintiff verbally challenged and filmed police activity and no probable cause existed for arrest). Plaintiffs' retaliation claim should survive.

### C.  Other Constitutional Violations

Plaintiffs allege that Officer Defendants violated the Fifth, Eighth, and Fourteenth Amendments. (Dkt. No. 9 ¶ 21.) Plaintiffs also bring a malicious prosecution claim. (*Id.* ¶¶ 104–11.) Defendants argue these claims should be dismissed for various substantive reasons and because Plaintiffs fail to respond to any of their arguments for dismissal. (Dkt. No. 10 at 6–8; Dkt. No. 12 at 3.) The Court agrees.

First, Plaintiffs' allegations fail as a matter of law. Plaintiffs cannot state a claim under the Fifth Amendment due process clause because their allegations do not involve federal actors. *See Arnold*, 979 F.3d at 270; *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Plaintiffs cannot state a claim under the Eighth Amendment because they do not allege they were in custody as a result of being convicted of a crime. *See Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987); *Robinson v. Webster Cnty.*, No. 19-CV-121, 2020 WL 1180422, at *11 (N.D. Miss. Mar. 11, 2020), *aff'd*, 825 F. App'x 192 (5th Cir. 2020). Plaintiffs cannot state a claim under the

Fourteenth Amendment due process clause because such a generalized remedy is inappropriate where, as here, more specific constitutional provisions address the issue. *See Arnold*, 979 F.3d at 270; *Mendez*, 2021 WL 5548565, at *10. Plaintiffs cannot state a claim for malicious prosecution because there is no such freestanding constitutional right and the Court has already addressed Plaintiffs' Fourth Amendment false arrest claim. *See Arnold*, 979 F.3d at 269–70; *Deville*, 567 F.3d at 169–70.[10]

Second, Plaintiffs have abandoned these claims by failing altogether to respond to Defendants' arguments for dismissal. *See JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (quotations omitted); *e.g.*, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 558 n.1 (5th Cir. 2006) (holding that a plaintiff's failure to respond to arguments raised in a motion to dismiss constituted abandonment of the related claim); *Garig v. Travis*, No. 20-CV-654, 2021 WL 2708910, at *27 (M.D. La. June 30, 2021) (granting defendants' motion to dismiss civil rights claims because plaintiff failed to meaningfully oppose the request). Plaintiffs' Fifth, Eighth, and Fourteenth Amendment claims and malicious prosecution claim should be dismissed.

## V.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendants' first Motion to Dismiss (Dkt. No. 8) be **DENIED AS MOOT** and Defendants' second Motion to Dismiss (Dkt. No. 10) be **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' unlawful entry, false arrest, and excessive force claims under the Fourth Amendment and retaliation claim under the First

---

[10] To the extent Plaintiffs assert a malicious prosecution claim based on Officer Defendants' false statements to prosecutors, they fail to tie these allegations to any constitutional provision not already addressed. *See Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812–13 (5th Cir. 2010) (finding malicious prosecution claim failed as a matter of law because plaintiff did not allege officials violated a specific constitutional right).

Amendment against Officer Defendants should survive. All other claims should be dismissed with prejudice, as Plaintiffs do not seek leave to amend their complaint.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on July 15, 2022.

Sam S. Sheldon
United States Magistrate Judge